WILLIAM B. HOOKER, APPELLANT, VS. WILLIAM H. JOHN-
SON, APPELLEE.

1. Where any of the pleadings of either party is pronounced insufficient upon
demurrer, and the party against whom the ruling is made proceeds to plead
over, the act of pleading over is a waiver of his exception to the ruling,
and the point will not be considered in this Court. If he desires to avail
himself of the exceptions, he must rest upon the ruling and make that the
ground of his appeal or writ of error.

2. Where a witness has a joint interest with the party who¹ calls him, either
in the subject matter to be recovered or in the contract as a general part-
ner, joint or part owner or joint-contractor, by which he has an interest in
the very thing claimed, or in the money to be recovered or in the costs inci-
dental to the suit, he is incompetent to give evidence for that party.

3. Where two enter into an agreement to share the profits of an enterprise
involving a contribution of labor, if a third party enter into a similar agree$_t$
ment with one of them to share in his portion of the profits and a sui_
arises between the two involving the partition under the original agree
ment, this third party is incapacitated by *interest* from testifying as a wit_
ness in behalf of him with whom he has made the sub-contract.

This case was decided at Tampa.

Appeal from the Circuit Court of Hillsborough county.
The opinion of the Court contains a statement of the
facts of the case, to which reference is made.

*Gettis* and *Magbee* for appellants.

*Hart & Rogers* for appellee.

DuPONT, J., delivered the opinion of the Court.

This was an action of assumpsit, instituted in the Circuit
Court of Hillsborough county by the appellee, William H.
Johnson, against William B. Hooker, the appellant. The
declaration contained the common *indebitatus* counts for
goods sold and delivered, work and labor done and ma-

terials furnished, together with the usual money counts. The defendant filed several special pleas, to which the plaintiff severally replied. To these replications of the plaintiff the defendant demurred, and, after argument had thereon, the pleas were ruled to be bad and the defendant was allowed to plead over, which he did by filing the *general issue*, upon which the case went to the jury and a verdict was found for the plaintiff. From the judgment pronounced upon this verdict this appeal has been taken, and we are now called upon to review the proceedings in the Circuit Court upon the exceptions embraced in the assignment of errors.

The first error assigned is as to the ruling upon the defendant's demurrer to the plaintiff's replications, by which it was adjudged that the several pleas filed by the defendant were bad and they ordered to be stricken out. It is unnecessary for us to notice this exception further than to remark, that it has been repeatedly ruled by this Court that where any of the pleadings of either party is pronounced insufficient by the Court upon demurrer, and the party against whom the ruling is made proceeds to plead over, the act of pleading over is a waiver of his exception to the ruling, and the point cannot be considered in this Court. If he desired to avail himself of the exception, he must rest upon the ruling and make that the ground of his appeal or writ of error.— *Vide* Bailey vs. Clark, 6 Fla. Repts., 516, and the cases there referred to.

The only other exception noted in the assignment of errors, and the one on which the decision of this case must turn, is as to the admission of the deposition of Levin P. Johnson, who is alleged to have been disqualified by interest to testify upon the trial of the cause. For the better understanding of this exception, it will be necessary to go into the circumstances of the case as developed by the evi-

dence; and it is also proper to be remarked, that the recovery which was had depended mainly, if not exclusively, upon the testimony of this witness, according to his statements contained in the deposition objected to. William H. Johnson, the plaintiff, and William B. Hooker, the defendant in the Court below, entered into a contract, by which it was mutually agreed between them that the plaintiff should furnish three hands and the defendant a like number, and with this force the plaintiff was to cultivate thirty-three acres of Sea Island cotton on the defendant's farm, in Hillsborough county, in the year 1853, and to house the same; that the defendant Hooker was to build a cotton gin on the premises during the summer and fall of the year 1853, gin the crop of cotton free of toll and give to the plaintiff an equal portion of all said cotton. This witness further states, that the plaintiff did plant, cultivate and house the cotton, as stipulated in the agreement, but that the defendant wholly failed to gin the cotton, and refusing to divide the crop so made with the plaintiff, he, the defendant, appropriated the whole of it to his own use. This is as much of the testimony of this witness as it is necessary to notice in this connection.

To show his interest in the subject matter of the suit, the testimony of Seth Howard is mainly relied on. This witness testifies as follows: "In the year 1853, a conversation took place at the house of witness between witness and plaintiff. Plaintiff stated that he had made a contract with defendant to go on his place; that Capt. Hooker, defendant, had given him a chance to make a crop; that he had agreed to made a crop for plaintiff (defendant;) that he was going to make a crop; that they had amongst them agreed to build a house for defendant; did not name the men; said he, plaintiff, had a son-in-law that was a good

26

carpenter, and that he and his son, or another son-in-law, witness disremembers which, were going to build the house, and he, with his little force, were to make a crop; could (do so) on the farm with the assistance of some of defendant's negroes; and when the crop was made and the house finished, those who built the house and those who made the crop were to divide the result of their labor, that they might be able in the fall to settle new places; heard him, plaintiff, mention the name of Brown, another son-in-law, but don't recollect whether it was he that was to work on the house with Gibson or plaintiff's son; thinks this conversation occurred in the month of April or May, as well as witness can recollect—this April is four Aprils ago." To a question asked by the Court the witness answered as follows: "Understood from Johnson that the arrangement in regard to the division of the proceeds of the labor was a private understanding between him and his family."

The testimony of Milton Johnson was also relied on to show the interest of Levin Johnson, the reading of whose deposition had been objected to. The material portion of his testimony is as follows: "Was present at the making of a contract between plaintiff and defendant in relation to the cultivation of a farm of defendant on the Manatee river; it was in the year 1853; the contract was made sometime about the last of January of that year; was on the premises a few months after the contract was made; when there at the time last mentioned saw a house being constructed; saw Jesse Gibson and Levin Johnson at work on the house; saw Bartly Brown on the premises; is slightly acquainted with him; he was said to be the [son-in-law of plaintiff; he worked upon the farm; does not recollect to have seen Brown at work on the house; was on the premises several times after the making of the con-

tract; did not see Gibson and Levin Johnson at work on the house every time I was there; saw them working on the farm occasionally; has seen them working on the house more than on the farm."

It is insisted on the part of the defendant, that this evidence fully establishes the fact that Levin P. Johnson, the witness whose deposition is proposed to be read, was interested in the subject matter of this suit under an agreement with the defendant "to divide the result of their labor." In other words, that this individual was one of the persons who constituted the "*family*" alluded to in the testimony of Seth Howard, and that, being so interested, he was an incompetent witness. The position is in strict accordance with the ruling of this Court, when the subject matter of this suit was before us in another form of action. In that action, it was proposed at the trial thereof to show that Jesse Gibson, who was offered as a witness by the defendant, was interested, by asking him "if he and plaintiff had not agreed to plant the premises in the declaration mentioned in partnership before or at or after the said contract between plaintiff and defendant." To this question the plaintiff by his counsel objected, and the objection was sustained by the Court. This ruling constituted the main exception noted in the assignment of error filed in that case, and upon it the judgment was reversed, this Court holding, "that where a witness has a joint interest with the party who calls him, either in the subject matter to be recovered or in the contract as a general partner, joint or part owner or joint contractor, by which he has an interest in the very thing claimed, or in the money to be recovered, or in the costs incidental to the suit, he is incompetent to give evidence for that party." *Vide* Hooker vs. Johnson, 6 Fla. Repts., 730.

Now, it is very manifest that the witness objected to,

although he were not a joint contractor, nor in privity with Hooker, one of the parties to the original agreement for the making of the crop, yet, if he be sufficiently identified as one of the parties to the *sub-contract* entered into by the plaintiff with his "*family*," he would have such an interest in the result of this suit as ought to exclude him from testifying as a witness at the trial. So far, indeed, would he be interested in the result, that if he were now to sue the plaintiff on the *sub-contract* entered into between them for the cultivation of the crop, we are not sure that the verdict in this case would not be conclusive evidence against this plaintiff of the extent of his interest. But the difficulty which we find in sustaining this assignment of error, (and we presume it was the one encountered by the Judge below,) is to identify Levin P. Johnson as one of the *sub-contractors*. We have looked very carefully into the evidence embodied in the bill of exception, and we have been unable to discover one particle of evidence which goes with sufficient certainty to fix the identity of this individual as a party to the " private arrangement," testified to by the witness Seth Howard as having existed between the plaintiff and his "family." However the fact may be, there is no evidence that Levin P. Johnson was a son of the plaintiff or constituted one of the members of his family. It is true that he bears the same *sir-name* with the plaintiff and that he was seen at work on the premises, both in the cultivation of the crop and in the erection of the building, but neither one of these circumstances, nor both, are sufficient to fix his identity. That fact was susceptible of direct and positive proof if it existed, and, in the absence of such proof, we are not permitted to enter the field of conjecture.

For these reasons, we are constrained to over-rule this exception also, and consequently the judgment of the Court below is affirmed with costs.